IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANDRE LAWSON, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| v. | ] | |
| | ] | CV-06-BE-0858-S |
| SHERIFF CHRIS CURRY, and | ] | |
| CAPTAIN MIKUL SMITHERMAN | ] | |
| | ] | |
| Defendants. | ] | |
| | ] | |
| | ] | |

**MEMORANDUM OPINION**

This case is before the court on Defendants' Motion to Dismiss Plaintiff's Amended

Complaint (Doc. 13). For the reasons discussed below, Defendants' motion is hereby

GRANTED in part and DENIED in part. Specifically, the court GRANTS Defendants' motion

to dismiss Counts III, IV, and V, and DENIES Defendants' motion as to Counts I, II, and VI.

**I.      BACKGROUND**

From May 1998 until April 2005, Plaintiff Andrea Lawson, a black female, was

employed as a Correctional Officer at the Shelby County Jail. Defendant Chris Curry served as

the Sheriff of Shelby County, and thus was also the director of the Shelby County Correctional

Facility. Defendant Mikul Smitherman was in charge of the day-to-day operations of the Shelby

County Correctional Facility.

Lawson became pregnant in the fall of 2003. She alleges that at that time her co-workers

knew that she dated outside of her race and that, after informing them of her pregnancy, her

supervisors – including Defendant Smitherman – started subjecting her to harassment and

intimidation.  She claims that she was denied light duty even though white employees were allowed light duty in similar circumstances.  She also states that, when she tried to complain about the harassment she experienced, Sheriff Curry told her that her hormones were acting up.  Lawson's complaint states that she received disciplinary actions but that white employees did not receive discipline for the same actions.  She complains that she was passed over for a promotion, and that the job was given to a less qualified white female.

Plaintiff further alleges that both defendants implemented a policy of terminating and harassing employees who engaged in interracial relationships and/or who had interracial children, as well as a policy of forcing women to resign when they became pregnant and terminating pregnant women if they refused to resign.

Lawson was terminated on April 6, 2005 for incompetence and criminal eavesdropping.  She now states that the same Personnel Board that determined she violated the criminal eavesdropping statute and discharged her found that a white male did not violate the criminal eavesdropping statute because no expectation of privacy exists in the jail.

Lawson filed her initial complaint on May 2, 2006.  Defendants responded by filing a motion for a more definite statement on May 19, 2006.  This court granted the motion on July 27, 2006, on the grounds that taken as a whole, the complaint constituted impermissible "shotgun" pleading and did not meet the heightened pleading standards for § 1983 claims.  Plaintiff submitted an Amended Complaint two weeks later, which the Defendants have now moved to dismissed on the basis of immunity and other grounds discussed more fully below.


II.	PLAINTIFF'S CAUSES OF ACTION

Unfortunately, even after this court ordered Plaintiff to clarify her complaint, Plaintiff's

complaint remains ambiguous and inartfully pleaded.  Rather than dismiss it in its entirety, however, taking the complaint in the light most favorable to Plaintiff, the court construes the complaint as alleging the following claims against both Defendants:

       Count 1: Constitutional violations brought under 42 U.S.C. § 1983
             (a)  Race discrimination
             (b) Violation of First Amendment right to freedom of association
             (c) Sex Discrimination

       Count 2: Violations of Title VII of the Civil Rights Act of 1964
             (a) Sex/Pregnancy discrimination
             (b) Race discrimination

       Count 3: Violation of Plaintiff's constitutional right to privacy brought under
       42 U.S.C. § 1983

       Count 4:  Retaliation brought under 42 U.S.C. § 1983.

       Count 5:  Race discrimination class action brought under 42 U.S.C. § 1983 and § 1981.

       Count 6: Defendants "acting in concert"  under 42 U.S.C. § 1983
             (a) Sex discrimination
             (b) Race discrimination

Lawson has alleged all claims against both Defendants in both their individual and their official capacities.  Almost every claim expressly names each Defendant, and the factual allegations specify conduct of each Defendant corresponding generally to the above claims.  The court, therefore, will consider whether any count is due to be dismissed as to either party in either capacity for failure to state a claim.

### III.    STANDARD OF REVIEW

       "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is . . . exceedingly low."  *Ancata v. Prison Health Serv's., Inc.*, 769

F.2d 700, 703 (11th Cir. 1985) (internal quotations omitted).  In reviewing a motion to dismiss

for failure to state a claim upon which relief can be granted, the court must construe all factual

allegations as true and resolve them in the light most favorable to the plaintiff.  *Beck v. Deloitte*

*& Touche*, 144 F.3d 732, 735 (11th Cir. 1998).  The court may grant the motion only if the court

clearly and beyond doubt cannot award the plaintiff relief under any set of facts that could be

proved consistent with the allegations of the complaint.  *See id*. at 735.  Accordingly, "[i]n

seeking dismissal for failure to state a viable claim, a defendant thus bears the very high burden

of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to

relief."  *Id*. at 735-36.


**IV.    DISCUSSION**

   **A.    Sovereign Immunity**

   Defendants argue that Lawson's claims under § 1981 and 1983 against the Defendants in

their official capacities should be dismissed because they are barred by the Eleventh Amendment

doctrine of sovereign immunity.  *See McMillian v. Monroe County*, 520 U.S. 781, 785 n.2

(1997).  Lawson, however, counters that sovereign immunity only bars claims against state actors

for monetary damages, not equitable relief.  *See Ex Parte Young*, 209 U.S. 123 (1908).

   Plaintiff's complaint does request an injunction against the Defendants as a remedy for

her racial discrimination claims.  The injunctive relief Plaintiff requests, however, merely would

require the Defendants to obey the law's proscriptions against racial discrimination and

retaliation.  As the court of appeals recently reiterated, "[i]t is well-established in this circuit that

an injunction demanding that a party do nothing more specific than 'obey the law' is

4

impermissible." *Elend v. Basham*, 2006 WL 3498349, *8 (11th Cir. Dec. 6, 2006) (citing *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999)).  Therefore, the court GRANTS Defendants' motion to dismiss Plaintiff's  § 1983 and § 1981 claims against the Defendants in their official capacities.

**B.      Section 1983 Claims**

*1.      Failure to Meet Pleading Requirements*

Defendants argue that Plaintiff's Amended Complaint fails to meet this circuit's heightened pleading requirements for § 1983 claims, the requirements of Federal Rule of Civil Procedure 10(b), and this circuit's prohibition against "shotgun" pleading.

A comparison of the original Complaint with the Amended Complaint suggests that Plaintiff made the following changes: (1) an expanded version of the "factual allegations common to all counts," including the addition of specific references to each Defendant; and (2) the addition of several paragraphs to almost every count of the complaint, adding direct references to each defendant, some new detail, and some miscellaneous statements of law. Plaintiff did not delete any of the at times lengthy and confusing paragraphs that appeared in her original complaint.

The court of appeals has held that "[s]ome factual detail in the pleadings is necessary to the adjudication of § 1983 claims."  *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359 (11th Cir. 1998).  Lawson's complaint, while meandering and confusing at times, does incorporate specific factual allegations regarding both Defendants suggesting violations of constitutional prohibitions against racial and sex discrimination.  Rather than dismissing the entire complaint, the court has construed and narrowed each count as described above in Section

II of this opinion.

### 2. *Qualified Immunity*

a.   <u>Standard of Review</u>

Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless the official violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citation and quotations omitted). "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Id*. (citing *GJR Investments*, 132 F.3d at 1370). "It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint fails to allege the violation of a clearly established constitutional right." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003).

To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). Once the defendants show that they were acting within their discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Id*. The Supreme Court articulated a two-part test to determine whether qualified immunity is appropriate. *See Saucier v. Katz*, 533 U.S. 194, 201

(2001).  A court first asks "'this threshold question: [t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?' . . . '[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.'"  *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (quoting *Saucier*, 533 U.S. at 201).

b.    <u>Discussion</u>

Lawson does not dispute that Sheriff Curry and Lieutenant Smitherman were acting within their discretionary authority.  Therefore, the court's analysis will focus on whether Lawson has alleged violations of clearly established constitutional rights.

Lawson has articulated the following actions as potential constitutional violations:  race discrimination (Count I(a)); sex discrimination (Count I(b)); interference with her freedom of association(Count I©)); invasion of privacy (Count III); and retaliation (Count IV).

As Defendants argue, the court of appeals has articulated three ways in which prior constitutional law can have been "clearly established" before a government actor can have "fair warning" that the conduct was unconstitutional: (1) "obvious clarity cases" where the conduct violates the constitution on its face; (2) cases where "some authoritative judicial decision in a case determines that 'X conduct' is unconstitutional *without tying* that determination to a particularized set of facts"; and (3) "fact-specific precedents" that established law only in certain circumstances.  *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002).  Defendants argue that Lawson's allegations fall within the third category, and therefore require Plaintiff to show that a similar case with "a very high degree of prior factual particularity" has previously determined such conduct to be unlawful.  *Id.* at 1352.

7

*(1)      Count I (Race discrimination, sex discrimination, and interference with First Amendment right to intimate association*)

Contrary to Defendants' argument, this court finds that the first two alleged constitutional violations – race discrimination and sex discrimination – at least fall within the second category of clearly established rights articulated in *Vinyard*.  The court of appeals recently expressly stated that "[t]he right to be free from racial discrimination in the employment context is clearly established." *Jolivette v. Arrowood*[1], 180 Fed. Appx. 883, 885-86 (11th Cir. 2006) (citing *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1321 (11th Cir. 2000)).  Similarly, with respect to sex discrimination, the court of appeals has noted in a qualified immunity analysis that "[t]he Equal Protection Clause confers a federal constitutional right to be free from sex discrimination." *Williams v. Bd. of Regents of Univ. System of Ga.*, 441 F.3d 1287, 1302-03 (11th Cir. 2006). Accordingly, Defendants' motion is DENIED as to Lawson's § 1983 claims of race and sex discrimination.

Plaintiff has also claimed that the Defendants – in allegedly harassing her and terminating her because of her interracial relationship and the race of her unborn child – interfered with her First Amendment right to intimate association.  The court of appeals has held that the right to intimate association is granted special protection under the First Amendment. *Cummings v. DeKalb County*, 24 F.3d 1349, 1354 (11th Cir. 1994).  In defining that right, the court stated that "'[a]t a minimum, the right of intimate association encompasses the personal relationships that attend the creation and sustenance of a family-marriage, childbirth, the raising and education of

---

[1] Although the *Jolivette* case was not selected for publication in the federal reporter, and is therefore only persuasive – not binding – precedent, the *Alexander* case it cites is binding and held that in 1992 "it was clearly established that intentional discrimination in the workplace on account of race violated federal law." *Alexander v. Fulton County, Ga.*, 207 F.3d at 1321.

children, and cohabitation with one's relatives.'" *Id.* (quoting *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994)).

Because Lawson's allegations pertain to the unborn child she was carrying and the race of the child's father, her claims fall squarely within the First Amendment right to intimate association.  Although the court of appeals has not expressly held that the right is "clearly established," in *Cummings*, it outlined the nature of the right and strongly implied that intimate association under the First Amendment constitutes a "clearly established right" for qualified immunity purposes.[2]  Therefore, Defendants' motion is DENIED as to Lawson's § 1983 claim for violation of her First Amendment right to intimate association.  Because, as discussed above, the allegations in Count I – race discrimination, sex discrimination, and interference with intimate associates – all constitute "clearly established rights," Defendants' motion is DENIED with respect to Count I in its entirety.

### (2) Count III (Invasion of Privacy)

Count III of Plaintiff's complaint alleges that the Defendants invaded her privacy by interrogating her about the race of her baby and her baby's father.  She claims that Defendants' actions violated her "right to avoid disclosure of highly personal matters, and her right to independently make certain decisions regarding the upbringing of her children."[3]

The invasion of privacy Lawson alleges does not implicate the first two categories of constitutional rights – those that violate the constitution on its face and those that fall within an

---

[2]  The only reason the court of appeals in *Cummings* granted qualified immunity to the defendant in that case was because Plaintiff had not even established that his relationship was of the marital or familial nature protected by the First Amendment.  Here, Lawson has alleged discrimination based on the race of the father of her child, clearly a relationship falling under the First Amendment's protections for intimate associations.

[3]  Pl.'s Compl. at 14.

authoritative judicial decision.  The right to privacy is not found on the face of the constitution or its amendments.  *Roe v. Wade*, 410 U.S. 113, 152 (1973) ("The Constitution does not explicitly mention any right of privacy.")

Although case law has established a general constitutional "zone of privacy" of "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education," *Paul v. Davis*, 424 U.S. 693, 712-13 (1976), that "zone of privacy" has not been extended to encompass claims similar to the ones Lawson makes.  Lawson cites to *Whalen v. Roe*, 429 U.S. 589 (1977), and a number of other cases, to support her claim that the right to privacy is clearly established.  None of the cases she cites, however, establishes a clear constitutional right not to have an employer inquire about an employee's pregnancy or the paternity of her child.

*Whalen* involved a state statute requiring that the state be provided with a copy of every prescription for certain drugs.  The other cases Lawson cites similarly do not implicate the privacy rights she alleges were violated.  Rather, these cases implicate areas of specific heightened privacy concerns:  the right to make decisions about pregnancy and contraception (*Roe v. Wade*, 410 U.S. 113 (1973), *Carey v. Population Servs., Int'l*, 431 U.S. 678 (1977), *Griswold v. Connecticut*, 381 U.S. 479, 485-86 (1965), (*Eisenstadt v. Baird*, 405 U.S. 438(1972)); the right to keep private certain medical information (*Harris v. Thigpen*, 941 F.2d 1495, 1513 (11th Cir. 1991)); the right to be free from bodily intrusion (*Skinner v. Oklahoma*, 316 U.S. 535, 541-42 (1942)*, Padget v. McDonald*, 401 F.3d 1273 (11th Cir. 2005)); the right to make parental decisions regarding child-rearing (*Pierce v. Society of Sisters*, 268 U.S. 510, 534-35 (1925), *Meyer v. Nebraska*, 262 U.S. 390, 399-400 (1923)).  None of these cases can be

10

extended to support a general privacy right not to be questioned about the patrimony of one's children or unborn children.

Such a right to privacy, if it exists, would fall within the third category of "clearly established rights," requiring a judicial decision granting constitutional protection in a case with similar facts, such that a reasonable person would be on notice that such conduct constitutes a constitutional violation. Although a reasonable person in either of the Defendants' positions should recognize the general impropriety of interrogating pregnant women in the manner Plaintiff alleges, a reasonable person could not be expected to know that such questioning violates any clearly established constitutional right. Lawson, therefore, has not carried her burden of demonstrating that Defendants are not entitled to qualified immunity against her right to privacy claim. Defendants' motion is hereby GRANTED as to Lawson's right to privacy claims found in Count III of her complaint.

### (3) Count IV (Retaliation)

The court of appeals has expressly held that "[t]he right to be free from retaliation is clearly established as a first amendment right and as a statutory right under Title VII; but no established right exists under the *equal protection* clause to be free from retaliation." *Ratliff v. DeKalb County, Ga.*, 62 F.3d 338 (11th Cir. 1995). Plaintiff has acknowledged that no clearly established right exists under the equal protection clause to be free from retaliation. Although the retaliation claim in Plaintiff's complaint only references the Fourteenth Amendment, she subsequently argued in her brief that she has brought the retaliation claims pursuant to the First Amendment.

To bring a retaliation claim under the First Amendment, the speech for which Plaintiff

alleges she was retaliated against must fall within the protections of the First Amendment.  The
court of appeals has stated:

> In determining whether an employee's speech touched on a matter
> of public concern, we look to "the content, form, and context of a
> given statement, as revealed by the whole record." . . .  In doing so
> we ask: whether the "main thrust" of the speech in question is
> essentially public in nature or private, . . . whether the speech was
> communicated to the public at large or privately to an individual,
> . . . and what the speaker's motivation in speaking was. . . .

*Mitchell v. Hillsborough County*, 468 F.3d 1276, 1283-84 (11th Cir. 2006).

Plaintiff's complaint states that Defendants retaliated against her for complaining that she
was passed over for a less qualified white female.  Her complaint, which was made as an
employee rather than as a citizen, and did not touch on a matter of public concern, does not
constitute speech protected under the First Amendment.  *See Mitchell*, 468 F.3d at 1284 n.27.
Rather, the heart of Lawson's retaliation claim is violation of equal protection rights.  Thus, she
has not alleged a violation of a clearly established constitutional right that would abrogate
Defendants' entitlement to qualified immunity.

Accordingly, Defendants' motion as to Count IV of Plaintiff's complaint is GRANTED.

**C.    Count II:  Title VII Claims**[4]

Defendants seek dismissal of Lawson's claims for sex/pregnancy discrimination in their
entirety because they allege this lawsuit was untimely filed and because they claim the scope of
her EEOC charge was limited to race discrimination and retaliation.  As noted earlier, at the
motion to dismiss stage, "the threshold of sufficiency [for a complaint] . . . is exceedingly low."

---

[4] Plaintiff has conceded that Title VII does not permit claims against the Defendants in their individual
capacities, and has voluntarily dismissed those claims.  She has retained, however, Title VII claims against the
Defendants in their official capacities.

*Ancata v. Prison Health Serv's., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (internal quotations omitted).  Defendant has failed to establish that Plaintiff did not initiate this lawsuit within 90 days of her actual receipt of the EEOC right-to-sue notice on February 15, 2006.  Additionally, Plaintiff explicitly referenced her pregnancy in her EEOC charge, and therefore that charge could have "reasonably been extended to encompass a claim" for sex/pregnancy discrimination. *Gregory v. Ga. Dep't of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004).  Accordingly, Defendants' motion to dismiss Lawson's Title VII claims of sex/pregnancy discrimination is DENIED.

> **D.   Count V:  § 1981 Claim**

Defendants argue, and Plaintiff admits, that she cannot bring claims against government officials under 42 U.S.C. § 1981, and that any such claims must be brought under § 1983. Count V, which Lawson brought only under § 1981, does not allege any new constitutional violations that have not already been addressed in Count I.  Defendants' motion to dismiss Count V, therefore, is GRANTED.

> **E.   Count VI:  § 1983 claims involving Defendants "acting in concert"**

Defendants first point out that Count VI of Plaintiff's complaint is verbatim identical to Count VI in her initial complaint, which this court deemed an impermissible "shotgun" pleading. Unlike the other claims, where Lawson has included additional factual allegations, Count VI remains unchanged from the original version.  Count VI alleges that the Defendants, "in concert while acting 'under color of state law,'" subjected Lawson to sex discrimination and race discrimination.  At this early stage in the proceedings, this court finds that in Count VI, Plaintiff has stated a claim for a civil rights conspiracy under 42 U.S.C. § 1985.  Accordingly, the court

will construe Count VI as such, and DENIES Defendants' motion to dismiss Count VI.

## V.    CONCLUSION

In summary, this court hereby GRANTS in part and DENIES in part Defendants' motion to dismiss.  Specifically, the motion is GRANTED with respect to all non Title VII claims against Defendants in their official capacities, based upon the Defendants' Eleventh Amendment sovereign immunity.  Defendants' motion is also GRANTED with respect to Count III (invasion of privacy) and Count IV (retaliation), based upon Defendants' qualified immunity.  Defendants' motion is GRANTED as to Count V, because it is redundant of Count I.  Defendants' motion is DENIED as to Count I (§ 1983 claims of race discrimination, sex discrimination, and interference with First Amendment right to freedom of association), Count II (Title VII claims of race discrimination and sex/pregnancy discrimination), and Count VI (§ 1985 claim of civil rights conspiracy to engage in racial and sex discrimination).   A separate order will be entered contemporaneously with this memorandum opinion.

DATED this 11th day of January, 2006.


_Karon O. Bowdre_
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE